IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| _____ | ) | |
| LIZETTE VAZQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10-cv-00638-RBS-FBS |
| | ) | |
| PRECON MARINE, INC. | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**FIRST AMENDED COMPLAINT**
**(Sex Discrimination in Violation of Title VII**
**of the Civil Rights Act of 1964, as amended)**

COMES NOW Plaintiff Lizette Vazquez, by counsel, and for her First Amended Complaint

in the above-captioned action states to this Honorable Court as follows:

**INTRODUCTION**

Until her termination in April 2008, Lizette Vazquez was the sole female commercial diver

employed by Precon Marine, Inc. This action involves the persistent and severe discrimination by

Defendant Precon Marine, Inc. ("Precon") against Plaintiff Lizette Vazquez on the basis of her sex.

Rick Reynolds, Plaintiff's supervisor for the majority of her employment with Precon, treated her in

an openly hostile manner and denied her the opportunity to perform the tasks of a commercial

diver, the position for which she was hired, because she is female. Mr. Reynolds singled Ms.

Vazquez out for verbal abuse and threatened her job on a regular basis. All of Precon's employees

on the job site where Ms. Vazquez was assigned were male. Her male co-workers frequently made

derogatory comments about her gender, with the acquiescence of Precon management. On several

occasions, Precon's employees put Ms. Vazquez's life in danger by failing to follow appropriate

protocol and not allowing Ms. Vazquez to use appropriate equipment. Precon employees, including Mr. Reynolds, actively attempted to make Plaintiff Vazquez appear incompetent. Ultimately, Precon's treatment of Ms. Vazquez became so intolerable that she found it was impossible to report to the job site to which she was assigned. Plaintiff's employment with Precon was terminated on or about April 26, 2008.

## PARTIES

1.     Plaintiff Lizette Vazquez is an adult female citizen of the Commonwealth of Virginia.

2.     Defendant Precon Marine, Inc. is a corporation doing business in the Commonwealthof Virginia.

## JURISDICTION

3.     Jurisdiction of this Honorable Court is invoked pursuant to 42 U.S.C. 2000e-5(f).

4.     Venue is proper as all of the acts complained of herein occurred in the Commonwealth of Virginia.

5.     On February 11, 2008, within five days of one of the continuing incidents of sex discrimination, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on account of her gender.

6.     Sometime thereafter, Precon responded to her EEOC charge by filing an extensive account of the company's position. Precon's response filed with the EEOC addressed in detail Ms. Vazquez's claims of disparate treatment in pay and work assignments, the sexually hostile and discriminatory work environment and the termination of Ms. Vazquez's employment with Precon.

7.     On September 28, 2010, the EEOC issued Plaintiff a notice of dismissal and notice of her suit rights.

8.      On December 29, 2010, within 90 days of her receipt of her notice of suit rights, Plaintiff filed her motion to proceed *in forma pauperis* along with her proposed complaint.

9.      On January 10, 2011, this Court granted Plaintiff's motion to proceed *in forma pauperis* and directed the clerk to file Plaintiff's original complaint.

## FACTS GIVING RISE TO RELIEF

10.     In early June 2007, Ms. Vazquez applied to work for Precon as commercial diver through Precon's online application system.

11.     Ms. Vazquez wanted to work for Precon because she knew that they had been awarded a contract to perform work on the Chesapeake Bay Bridge Tunnel.

12.     On or about June 18, 2007, after submitting two online applications and failing to receive a response, Ms. Vazquez went to Precon's offices in person to fill out a job application for a commercial diver position.

13.     On or about June 19, 2007, Ms. Vazquez was hired by Precon to work as a commercial diver.

14.     Terry Pruitt was the Precon employee who hired Ms. Vazquez.

15.     At the time that she was hired, Mr. Pruitt asked Ms. Vazquez what her salary requirements were. Ms. Vazquez told Mr. Pruitt that she would like to make $16.25 per hour. Mr. Pruitt agreed that Precon would pay her $16.25 per hour for "topside" non-diving hours and $21.25 per hour for diving hours.

16.     At the time she was hired, Mr. Pruitt also told Ms. Vazquez that Precon would help her to obtain her Association of Diving Contractors ("ADC") commercial diving certification.

17.     On or about June 20, 2007, Ms. Vazquez began working for Precon.

18.     When hired, Ms. Vazquez was the only female diver employed by Precon, and she was assigned to an all-male work site.

19.     Precon assigned Ms. Vazquez to the Chesapeake Bay Bridge job site, a work site supervised by Rick Reynolds.

20.     When Ms. Vazquez arrived at the job site, she introduced herself to Mr. Reynolds and waited for him to assign her tasks.

21.     Shortly after arriving at the job site, Randy Williams, a Precon employee, commented that "she can't be worse than Steve," referring to a former Precon employee, who had the reputation of being the worst diver to have ever worked at Precon.

22.     Several of the crew members, all of whom were male, made comments to the effect that now that there was a "girl" on deck there was going to be bad weather.

23.     At the work site, Ms. Vazquez heard crew members ask each other "what is a girl doing here?"

24.     A construction worker on the crew named Brian Hubert asked Ms. Vazquez, "Why are you here, you like this kind of work?" to which Ms. Vazquez responded, "Yes."

25.     Captain Tony Sanchez told Ms. Vazquez that he was shocked when he realized that she was a "girl" walking up to the job site.

26.     On her first day at work, Mr. Reynolds instructed Ms. Vazquez to "go over there" below the scaffolding and watch the other employees work. Ms. Vazquez spent the next 10 hours standing under the scaffolding watching the other crew members work and assisting as best she could without instruction or direction from Mr. Reynolds.

27.     Mr. Reynolds barely spoke to Ms. Vazquez during the first few of weeks that she worked for Precon.

5

28.    On or about June 29, 2007, Mr. Reynolds finally permitted Ms. Vazquez to dive only when the other divers asked Mr. Reynolds to permit her to do so because they were curious to see what she could do.

29.    Before getting into the water, Ms. Vazquez overheard Mr. Reynolds threaten "she had better finish power washing the pile or she will never get in the water again."

30.    Ms. Vazquez successfully completed the task assigned.

31.    During the second week in July, Ms. Vazquez took a previously-scheduled vacation which had been approved by Precon at the time that she was hired.

32.    During the months of July and August 2007, Mr. Reynolds deprived her of the opportunity to do the work she was hired to do, and Ms. Vazquez was only permitted to dive on one occasion for two hours.

33.    Mr. Reynolds would not permit Ms. Vazquez to do any work that involved working on the scaffolding. Mr. Reynolds did not prohibit any of the male crew members from working on the scaffolding.

34.    Mr. Reynolds' treatment of Ms. Vazquez and refusal to assign her work created resentment among the all-male crew.

35.    On or about August 30, 2007, while Ms. Vazquez was helping Mr. Reynolds refuel the skiff with an employee named Ellis standing next to her, she asked Mr. Reynolds, "When can I get a turn to put up the rings?" "Putting up the rings" was a central task for the Precon divers on the Chesapeake Bay Bridge project and involved placing a large metal ring around the pilings of the bridge under the water. Mr. Reynolds replied to Ms. Vazquez, "You can't handle the work." Ms. Vazquez then said: "You haven't even given me the chance to try." Mr. Reynolds told Ms. Vazquez that "you wouldn't be able to do it because you're a girl." Ms. Vazquez told him that it was not fair

because Christian Delgado, a male diver who had been hired after her, had been allowed to put a ring up. Mr. Reynolds responded and said he would not let Ms. Vazquez put up a ring and he "didn't have the luxury to let her." After the conversation ended, Ellis, who had heard everything, told Ms. Vazquez "that is discrimination" and that she should take it up with Matt Miller, the owner of Precon.

36.     During the months of September and October 2007, Mr. Reynolds only permitted Ms. Vazquez to dive for one hour, which deprived her of the opportunity to earn higher wages for time spent diving, due to her gender. Male divers were assigned diving tasks on a daily basis.

37.     Mr. Reynolds often made comments, referring to Ms. Vazquez, that "she can't do that" and "Liz can't handle that." Mr. Reynolds did not make similar comments about male employees.

38.     At one point, Randy Williams made the comment "Why send a girl to do a man's job?"

39.     Mr. Reynolds often singled Ms. Vazquez out for criticism, which he would express by yelling and screaming at Ms. Vazquez. Mr. Reynolds did not single out male workers to yell at them.

40.     On the rare occasions that Mr. Reynolds assigned a task to Ms. Vazquez, he would threaten that if she did not finish a task, she would be fired. He did not make similar threats to male divers. These threats caused work that is inherently stressful and dangerous to be even more stressful for Ms. Vazquez because she was in constant fear that she would be fired, leading her to compromise her safety.

41.     On or about November 18, 2007, the lead diver, Lenny Brightman, instructed Ms. Vazquez to get her gear together and prepare to dive. As Ms. Vazquez was setting up for the dive,

Mr. Reynolds asked Mr. Brightman who was going to dive. Mr. Brightman indicated that Ms. Vazquez was going to dive and Mr. Reynolds responded "No, she is not." Mr. Reynolds then called the owner of Precon, Matt Miller, and told him he wished he had a diver to do the task, even though Ms. Vazquez was ready to dive.

42.     At one point, Ms. Vazquez was assigned to another work site at Brambleton Bridge. Mr. Reynolds instructed Ms. Vazquez that while she was there she was just to stand and watch the work.

43.     On several occasions, Precon's discriminatory actions toward Ms. Vazquez put her safety at risk and her life in danger.

44.     As a part of their work routine, male divers talked to each other about the best way to perform tasks. Ms. Vazquez was excluded from these discussions. When Ms. Vazquez approached male divers while they were talking in a group about work, they would stop talking and move away. In contrast, the other divers gave a male diver, Christian Delgado, step-by-step instructions about how to perform certain tasks when he started working for Precon.

45.     Ms. Vazquez was not permitted to use the "hat" (a helmet worn by commercial divers enabling them to breathe under the water) that fit her properly. Brian Beets, a male diver, told Ms. Vazquez that the particular hat that fit her properly was "his," and he would not let her use it, even though all of the hats were owned by Precon.

46.     Ms. Vazquez was forced to use a hat that had been improperly modified and did not fit her. On one occasion, the hat filled with water, causing Ms. Vazquez to experience severe vertigo. Ms. Vazquez had to come to the surface and remove the hat after which she vomited. Male divers were not forced to use hats that did not fit them properly and were improperly modified.

47.     Ms. Vazquez was only permitted to dive with any regularity when the water temperature became extremely cold and the male divers did not want to dive.

48.     On one occasion in November 2007, while Ms. Vazquez was diving, crew members instructed one of the other construction workers to purposefully drop in the water two wrenches that Ms. Vazquez needed to complete her assigned task. Ms. Vazquez attempted to locate the dropped tools in the frigid water until Mr. Reynolds told her "not to be a hero" and instructed her to end the dive. While male divers worked under the water, tools were not purposefully dropped in the water.

49.     On or about December 5, 2007, Mr. Reynolds discovered Ms. Vazquez's pay rate and he immediately informed the entire crew what her pay was. The other crew members got angry when they were told that Ms. Vazquez was making $16.25 per hour when the usual starting rate for divers was $15.00 per hour. The male workers particularly resented Ms. Vazquez because she did not often dive and did not work on the scaffolding (because Mr. Reynolds did not allow her to do so).

50.     Mr. Reynolds would permit a male diver to dive while intoxicated, but rarely allowed Ms. Vazquez to dive.

51.     On or about December 10, 2007, Ms. Vazquez was assigned to tend for an intoxicated male diver.  The following day, she had to repair the work done by the intoxicated diver.

52.     After Mr. Reynolds had disclosed Ms. Vazquez's pay rate to the other workers, they opened up a bag of epoxy powder, threw it around a large tool box, and told Ms. Vazquez that since she made more money than them she could clean it up. Ms. Vazquez refused, telling them that was not her job.

53.     Travis Miller, Matt Miller's son, and other male workers complained to Mr. Miller, Precon's owner, that Ms. Vazquez was being paid too much.

54.     On or about December 21, 2007, Mr. Reynolds informed Ms. Vazquez that she would have to take a pay cut or else she would be fired. Mr. Reynolds also told Ms. Vazquez that Mr. Miller would not sign off on her ADC certification, despite the fact that she had been told that Precon would help her obtain her ADC card at the time she was hired.

55.     On or about December 26, 2007, Ms. Vazquez went to speak to Mr. Miller in person. Mr. Miller told Ms. Vazquez that he would not continue to pay her at her current rate because she could not handle the diving and because she did not have her ADC certification. Ms. Vazquez explained that Mr. Pruitt was aware that she did not have her ADC card when she was hired and that she had completed all of her hours of diving necessary to obtain the ADC card. All that was necessary was for Precon to send in the application for her to obtain her ADC card. Despite her explanation, Mr. Miller lowered Ms. Vazquez's pay to $13.50 per hour when the  starting rate for divers at Precon was around $15.00 per hour. Ms. Vazquez took the pay cut because Mr. Miller told her that if she did not do so she would be terminated. Ms. Vazquez was not aware of any male workers being required to take a pay cut as a condition of continued employment.

56.     Christian Delgado, as well as other male divers, did not have their ADC certification and were paid more than Ms. Vazquez after her pay was reduced.

57.     On or about December 27, 2007, Mr. Reynolds instructed Ms. Vazquez to get her dry suit because she needed to get in the water and find a plastic box that had been dropped into the water. Ms. Vazquez was told that the box was sitting on top of scaffolding when both the scaffolding and box fell in the water. The water temperature was close to 32 degrees and there was a strong current. Mr. Reynolds told Ms. Vazquez that if she did not locate the box she would be

10

fired. Christian Delgado, a male diver, was supposed to tend her while she was in the water. Ms. Vazquez was able to locate the scaffolding but after extensive searching could not locate the box. When she surfaced, Ms. Vazquez found that Mr. Delgado, who was supposed to be tending her, was gone. Mr. Delgado had left a construction worker who did not speak English or have any diving experience to tend her. On the way back in the skiff, a worker named Louis told Ms. Vazquez that the box had not been dropped that day but rather, it had fallen in the water one week ago, making it nearly impossible to find. Ms. Vazquez was suspended for one day without pay for failing to find the box.

58.     On the night of December 27, 2007, Lenny Brightman left Ms. Vazquez a hostile voice mail message stating repeatedly that she "was just a girl."

59.     Ms. Vazquez was subjected to sexual comments and propositions during her employment with Precon.

60.     On a few different occasions, Randy Williams told Ms. Vazquez that he had heard that she used to go in the back of a "Conex" (storage) container and do "stuff" with her former boss, Paul Wood, implying that they did things of a sexual nature.

61.     On two separate occasions, Christian Delgado asked Ms. Vazquez to have sex with him in the cabin of the vessel at work.

62.     Mr. Reynolds commented to Ms. Vazquez that she should lead Gino, a 15 –year-old worker, to manhood because it was his birthday. Mr. Reynolds did not make a similar suggestion to any male employees.

63.     In January 2008, Ms. Vazquez was assigned to work on the Norfolk project which was supervised by Dave Oshman, a Precon employee. Early Marine employees, Shane Smith and

11

Buddy Kane, with whom Ms. Vazquez had worked with at her previous job, also worked at the Norfolk project.

64.     Mr. Oshman assigned Ms. Vazquez diving tasks often and she logged approximately 29 diving hours in January 2008.

65.     Ms. Vazquez told Mr. Oshman and Buddy Kane about her experience working for Mr. Reynolds, particularly about his verbal abuse and not allowing her to dive. Their response was that it was just "Rick being Rick," and no action was taken.

66.     While Ms. Vazquez was assigned to the Norfolk site in January 2008, Mr. Miller visited the site and told Ms. Vazquez that he had heard that she was doing good work and that he was going to raise her pay.

67.     On February 5, 2008, Ms. Vazquez was again assigned to work at the Chesapeake Bay Bridge project supervised by Mr. Reynolds. That day at the work site, Mr. Reynolds screamed and yelled at Ms. Vazquez, blaming her for the fact that certain equipment was missing even though she had not been present at the work site the day before to load the equipment. Mr. Reynolds did not scream at any of the male employees who had loaded the equipment.

68.     On February 6, 2008, Ms. Vazquez had been instructed to report to the Norfolk project and arrived early. After reporting to the Norfolk work site, she was told by another employee that she was actually supposed to be working at the Chesapeake Bay Bridge project. Once Ms. Vazquez's supervisor, Dave Oshman arrived, she confirmed with him that she should report to the Chesapeake Bay Bridge work site.

69.     Ms. Vazquez immediately got in her car and began driving over to the Chesapeake Bay Bridge work site. She called Mr. Reynolds, the supervisor of the Chesapeake Bay Bridge project, to tell him that she was on her way. Mr. Reynolds responded by screaming and yelling at

Ms. Vazquez over the phone and then hung up on Ms. Vazquez. Ms. Vazquez was crying and shaking so much that she had to pull her car over to the side of the road.

70.     Given the open hostility displayed by Mr. Reynolds and his past mistreatment of her, Ms. Vazquez could not force herself to continue driving over to Mr. Reynolds' work site. Ms. Vazquez called Mr. Miller and told him that she could not take working for Mr. Reynolds anymore. Mr. Miller responded by saying that if she could not work for Mr. Reynolds then she should just resign and then hung up the phone.

71.     Ms. Vazquez then called Terry Pruitt and told him what had happened. He told Ms. Vazquez to go home and that he would try to talk to Mr. Miller about it.

72.     Two days later, when Ms. Vazquez had not heard anything from Mr. Pruitt, she called him and he told her that he had still not spoken to Mr. Miller.

73.     Ms. Vazquez was extremely upset, and she went and spoke with a counselor employed by Precon about her experience.

74.     On or about February 8, 2008, Ms. Vazquez went to her doctor for help, telling him that she could not sleep and was extremely anxious because of the stress at work.

75.     On or about February 8, 2008, Ms. Vazquez filled out a questionnaire at the EEOC.

76.     On or about February 11, 2008, Ms. Vazquez's charge of discrimination was filed with the EEOC.

77.     On or about February 13, 2008, Ms. Vazquez was hospitalized for three days after she overdosed on pain medication.

78.     Thereafter, Precon placed Ms. Vazquez on Family Medical Leave. Precon later extended this leave when notified by her doctor that she was unable to return to work if she had to be supervised by Mr. Reynolds.

79.     Precon refused to allow Ms. Vazquez to be assigned to a supervisor besides Mr. Reynolds.

80.     On or about February 21, 2008, Ms. Vazquez began treatment with a mental health therapist.

81.     On or about March 24, 2008, Ms. Vazquez submitted a letter to the EEOC clarifying that she had not resigned from her employment with Precon.

82.     On or about April 26, 2008, Ms. Vazquez received a letter from Precon stating that her employment had been terminated.

83.     On or about August 29, 2008, the EEOC sent Precon's response to her charge of discrimination to Ms. Vazquez .

84.     In its statement to the EEOC, Precon stated Ms. Vazquez had been informed that she either had to report to work at the Chesapeake Bay Bridge Tunnel project or resign.

85.     Precon also stated to the EEOC that on or about March 25, 2008, Precon sent a letter to Ms. Vazquez "reinstating" her employment and enclosing another Family Medical Leave certification form.

86.     Precon also stated that they informed Ms. Vazquez that her employment with Precon was terminated on or about May 1, 2008.

87.     On or about September 22, 2008, the EEOC received Ms. Vazquez's written rebuttal to Precon's statement.

### COUNT I
### (Disparate Treatment and Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended)

88.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-87 of this Amended Complaint with the same force and vigor as if set out here in full.

89.     Defendant Precon subjected Plaintiff Vazquez to disparate treatment and discrimination on the basis of her sex by reducing her earnings due to her sex. Because Ms. Vazquez is female, Defendant refused to assign Ms. Vazquez diving tasks, thereby depriving her of pay that she would have received if she was able to work more hours at the diving rate of pay. Because Ms. Vazquez is female, Defendant reduced her pay after complaints were made by male crew members. Additionally, Defendant subjected Ms. Vazquez to disparate treatment in the terms and conditions of her employment by, *inter alia*, directing Ms. Vazquez to dive under dangerous conditions while not subjecting the male divers to such adverse employment conditions.

90.     The acts committed by Precon employees were committed because of or on account of Plaintiff Vazquez's sex, female, and such acts constitute sex discrimination in violation of 42 U.S.C. 2000e-2(a)(1).

91.     Mr. Reynolds' and Precon's discrimination against Plaintiff on the basis of her sex unreasonably interfered with the performance of her work for Precon.

92.     Despite Plaintiff Vazquez's complaints about Mr. Reynolds' treatment of her, Defendant failed to take any action to prevent continued discrimination against Plaintiff.

93.     Precon's actions and failures to act were willful, malicious and in conscious disregard of Plaintiff's civil rights.

94.     As a direct and proximate result of these unlawful acts by Defendant, Plaintiff Vazquez has suffered and continues to suffer lost wages, damage to her career, pain, suffering, humiliation and emotional distress.

15

**COUNT II**
**(Hostile Work Environment in Violation of Title VII**
**of the Civil Rights Act of 1964, as amended)**

95.     Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-94 of this Amended Complaint with the same force and vigor as if set out here in full.

96.     Plaintiff Vazquez was subjected to an ongoing campaign of severe and pervasive harassment leveled against her by Mr. Reynolds and other Precon employees on the basis of her sex, which took the form of, *inter alia*, not permitting Ms. Vazquez to perform the tasks of a commercial diver, the job she was hired to do, hostile, negative and gender-based comments, harassment based on Ms. Vazquez's gender, comments of a sexual nature and sexual propositions made to Ms. Vazquez, placing Ms. Vazquez's safety in jeopardy, engaging in conduct designed to make Ms. Vazquez appear incompetent, lowering Ms. Vazquez's pay and other discriminatory conduct directed toward Plaintiff Vazquez, thereby creating a hostile work environment.

97.     Plaintiff subjectively perceived Mr. Reynolds' and Precon's treatment of her to be discriminatory, hostile and offensive; and the treatment was objectively discriminatory, hostile and offensive.

98.     Precon failed to take any remedial action to prevent Mr. Reynolds and Precon employees from further harassing Plaintiff Vazquez even after Ms. Vazquez voiced her concerns to Precon.

99.     Precon's actions and failures to act were willful, malicious and in conscious disregard of Plaintiff's civil rights.

100.    As a direct and proximate result of the unlawful acts of Defendant, Plaintiff Vazquez suffered and continues to suffer lost wages, damage to her career, pain, suffering, humiliation and emotional distress.

16

## COUNT III
### (Constructive Discharge and Termination in Violation of Title VII
### of the Civil Rights Act of 1964, as amended)

101.    Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-100 of this Amended Complaint with the same force and vigor as if set out here in full.

102.    Precon subjected Plaintiff Vazquez to intolerable working conditions on the basis of her sex, as referenced above, including severe and pervasive sex discrimination, derogatory and gender-based comments, verbal abuse and not permitting Ms. Vazquez to perform the duties of the job she was hired to do, forcing Ms. Vazquez to accept a pay cut or be terminated because of her sex and failing to follow the appropriate protocol to ensure Ms. Vazquez's safety and other discriminatory conduct directed toward Plaintiff Vazquez.

103.    In particular, due to Mr. Reynolds' ongoing harassment, verbal abuse and discrimination against Plaintiff Vazquez, she could not further tolerate working under his supervision.

104.    When Plaintiff Vazquez informed Precon that she could no longer work under Mr. Reynolds' supervision Precon refused to allow Ms. Vazquez to work for a supervisor other than Mr. Reynolds, telling her that she had no other option but to resign.

105.    Precon's conduct toward Plaintiff Vazquez and knowing tolerance of a hostile work environment was intended to force her out of her job.

106.    106. Due to the extreme anxiety caused by the stress and harassment that she suffered at work, Plaintiff had to take Family Medial Leave from work at Precon, but she intended to return to work for Precon when she recovered.

107.    Ultimately, Precon terminated Ms. Vazquez's employment.

108.    Precon's actions and failures to act were willful, malicious and in conscious disregard of Plaintiff's civil rights.

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

        A.    Enter judgment on her behalf against Defendant;

        B.    Award Plaintiff Vazquez compensatory damages and punitive damages;

        C.    Award Plaintiff Vazquez back pay and front pay;

        D.    Award Plaintiff Vazquez her court costs, expenses, attorneys' fees, prejudgment interest and post-judgment interest;

        E.    Declare that Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.; and

        F.    Grant such other relief as this Court deems just and proper.

TRIAL BY JURY IS DEMANDED

                            Respectfully submitted,

                            LIZETTE VAZQUEZ,

                            By: /s/_____
                                 Harris D. Butler, III (VSB No. 26483)
                               Rebecca H. Royals (VSB No. 71420)
                               Paul M. Falabella (VSB No. 81199)
                               Attorneys for Plaintiff
                               BUTLER WILLIAMS & SKILLING, P.C.
                               100 Shockoe Slip, Fourth Floor
                               Richmond, Virginia  23219
                               Telephone: (804) 648-4848
                               Facsimile:  (804) 648-6814
                               Email: hbutler@butlerwilliams.com
                                        rroyals@butlerwilliams.com
                                        pfalabella@butlerwilliams.com

Bruce A. Fredrickson (Admission *Pro Hac Vice* pending)
Sheri A. Strickler (Admission *Pro Hac Vice* pending)
Attorney for Plaintiff
Webster, Fredrickson, Correia & Puth
1775 K Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 659-8510
Facsimile: (202) 659-4082
Email: bfredrickson@WFCPLaw.com
          sstrickler@WFCPLaw.com

19